UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARD O'DONNELL,<br><br>                          Plaintiff,<br><br>        -against-<br><br>MAGAZZINO ITALIAN ART<br>FOUNDATION, NANCY OLNICK, in her<br>individual and professional capacities,<br>GIORGIO SPANU, in his individual and<br>professional capacities, KEN POLLET, in his<br>individual and professional capacities,<br>DIANNA SCHULTE, in her individual and<br>professional capacities,<br><br>                          Defendants. | 25-CV-2918 (JGLC)<br><br>**<u>OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Gerard O'Donnell brings retaliation claims under Title VII and the New York

State Human Rights Law ("NYSHRL") against his former employer, Magazzino Italian Art

Foundation ("Magazzino" or "the Museum") and various individuals who worked there, alleging

that he was fired for complaining about women employees being treated poorly. Before the Court

is Defendants' Motion to Compel Arbitration and Stay the Action, pursuant to the Federal

Arbitration Act ("FAA"). There is no dispute that the employment contract, including an

agreement to arbitrate, is valid and governs. Instead, Plaintiff argues that because his underlying

complaint addressed sexual harassment in the workplace, arbitration cannot be compelled under

the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA").

As described below, Plaintiff's underlying complaint relates to sexual harassment under New

York law. Consequently, the EFAA prohibits forced arbitration in this case, and the Court denies

Defendants' Motion to Compel Arbitration and Stay the Action.

**BACKGROUND**

The following facts, unless otherwise noted, are taken from the Complaint and presumed to be true for the purposes of this motion. *See Smith v. Meta Platforms, Inc.*, No. 24-CV-4633 (JPC), 2025 WL 2782484, at *1 (S.D.N.Y. Sept. 30, 2025); ECF No. 1 ("Compl."). Plaintiff Gerard O'Donnell ("Plaintiff" or "O'Donnell") was first hired in 2021 as a part-time Gallery Attendant at Magazzino, an Italian art museum in Cold Spring, New York. ¶¶ 1, 49. Shortly after his employment began, Plaintiff signed an arbitration agreement with Magazzino. *See* ECF No. 25-1. The agreement requires that

> any dispute, controversy or claim between the parties arising out of, relating to or concerning [O'Donnell's] employment with the Institute, termination of such employment or this Letter Agreement, other than claims that cannot be legally arbitrated, shall be finally settled by arbitration in the state of New York, before and in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association before a single arbitrator.

*Id.* ¶ 19. A few months after he started the part-time role, Plaintiff was promoted to a full-time Gallery Attendant, before being promoted again to Operations Manager and then to Operations and Facilities Manager in September 2022. ¶¶ 52, 56–57, 61. In October 2022, he signed a superseding agreement that included his new job description, salary, and benefits. ECF No. 25-2 at 3. Plaintiff contends that he was repeatedly praised for his work at Magazzino. ¶¶ 302, 318.

In December 2023, Magazzino hired Filippo Fossati ("Fossati") as a curator. ¶ 90. He was promoted, about a month later, to Director of the museum. ¶ 122–23. Soon after Fossati joined Magazzino, female employees of the company began complaining to Plaintiff about Fossati's behavior. *See, e.g.*, ¶¶ 124–25, 155–56, 252–55, 277–79, 290–94. Plaintiff reported this conduct to management, who, according to Plaintiff, began retaliating against him. *See, e.g.*, ¶¶

2

288, 307–08, 322, 337. Plaintiff was fired shortly after he began complaining about Fossati's treatment of female employees. ¶ 339.

## I.        Allegations About Gender-Based Misconduct at Magazzino

Several employees complained to Plaintiff about Fossati and how he treated them, including Margaret Scarborough ("Scarborough"). *See* ¶ 125. Scarborough was the Scholar-in-Residence at the Museum. *See* ¶ 91. Soon after Fossati joined the Museum in December 2024, the two began meeting in person and messaging via WhatsApp about Scarborough's ideas to improve the Research Center and about events the Museum could host. ¶¶ 93–103. Fossati frequently used emojis with Scarborough. *See, e.g.*, ¶¶ 100, 102–03. He responded to one of Scarborough's documents with a red rose emoji, and he used both a red rose emoji and a praying emoji when he asked her, in Italian, if they could "see or talk to each other today." ¶¶ 98–103. That same day, Fossati showed up uninvited to a lunch between Scarborough and a female colleague at the Museum's café and proceeded to discuss Museum programming. ¶¶ 106–112. During the conversation, Fossati did not agree to give Scarborough credit for her work on the programming, using a tone that made both Scarborough and her colleague uncomfortable. ¶¶ 111–113.

On January 17, 2024, Fossati asked if he and his wife could visit Scarborough's apartment, which the Museum provided for Scarborough during her residency. ¶ 116; ECF No. 1-3 ("Scarborough Decl.") ¶ 4. When Scarborough declined, stating her preference to meet at a local café, Fossati "yelled" at her on the phone and insisted that it was just a "friendly coffee." ¶¶ 117–20. Immediately after, Fossati messaged Scarborough to return a book he had loaned her. ¶¶ 121. Scarborough's discomfort with Fossati grew following his promotion to Director, and

statements from colleagues reinforced her belief that he treated women at Magazzino poorly. *See* ¶¶ 114, 125–27.

On January 19, 2024, Giorgio Spanu ("Spanu"), one of the co-founders of the Museum, informed Scarborough that he and the other co-founder Nancy Olnick ("Olnick") would be visiting her apartment in a few hours in connection with a plan to rent another unit in the building. ¶¶ 2, 130. When they arrived, they were accompanied by Fossati and his wife. ¶ 133. As Spanu showed Fossati and his wife around the apartment, Fossati opened closet doors and looked at Scarborough's clothes and belongings. ¶¶ 134–35. In passing comments, Fossati told Scarborough that he would "take care" of further planning and decisions related to lectures that they had been discussing. ¶¶ 137–38.

Also on January 19, 2024, Scarborough alerted Dianna Schulte ("Schulte"), the Museum's Chief Financial Officer, via email about the "uncivil," "unprofessional," and "inappropriate" manner in which Fossati was communicating with her. ¶¶ 63, 132. Schulte directed Scarborough to contact Ken Pollet ("Pollet"), the Human Resources Director. ¶ 139. The next day, while Scarborough was in the Museum's Research Center, Fossati came in to speak with her. ¶ 141. He "berat[ed]" her in Italian, criticizing her communication style, educational background, and work, and explained that he was angry about the apartment ordeal, among other things. ¶¶ 142–48. He told her that he did want to work with her anymore and demanded that she provide him with a copy of her doctoral dissertation. ¶¶ 143, 148.

Scarborough emailed Pollet to share her concerns about Fossati the same day. ¶ 158. The next day, in response to an email from Pollet, Scarborough expressed her desire to "file a formal complaint" about the January 20 conversation with Fossati. ¶ 161. She spoke with Pollet on January 22. ¶ 162–68. To Scarborough's knowledge, despite further phone calls, Pollet did not

take any action beyond escalating her complaint to Spanu and Olnick. ¶¶ 171, 173–84. Without any remedy, Scarborough spent less time at the Museum to try to avoid Fossati. ¶ 187. She was eventually fired in June 2024. ¶ 220.

Plaintiff alleges that other female employees also had negative experiences with Fossati. A female employee told Scarborough that Fossati had "challenged her credentials and competency . . . and accused her of lying on her resume." ¶ 114. A male employee told Scarborough that he believed Fossati treated women worse than men. ¶ 126. During his short tenure as Director, Fossati also excluded a different female employee from working on museum events. *See* ¶¶ 252–62. The Museum's female librarian also filed a human resources complaint about poor supervision from Fossati. ¶ 279.

## II.    Plaintiff Reports Discriminatory Treatment and Is Fired

Plaintiff attempted to speak with Fossati on several occasions in February 2024 to discuss what he viewed as mistreatment of the Museum's female employees. ¶ 285. Fossati did not engage. ¶ 286. On February 28, 2024, Plaintiff emailed Pollet to complain about Fossati's treatment of various female employees, criticize Fossati more broadly, and report low staff morale. ¶ 288 ("February Complaint"). Plaintiff never received a response to his email. ¶ 289.

Plaintiff alleges he was quickly retaliated against thereafter. A few weeks after the February Complaint, Spanu criticized Plaintiff for failing to put up decorations around the museum in an email with multiple colleagues copied. *See* ¶¶ 297–300. Plaintiff alleges that Spanu had never criticized his performance before the February Complaint. ¶¶ 301, 318. A few days later, Spanu confronted Plaintiff about making a human resources complaint, reprimanding him for not speaking to Spanu directly. ¶¶ 303–05. Plaintiff reiterated, "[i]t is not like one woman is being mistreated, multiple women are being mistreated." ¶ 308. After an extended

discussion, Spanu referenced Plaintiff and stated: "I don't want anyone who is not happy to be here." ¶ 310. Spanu continued to criticize Plaintiff's work in the coming months. *See* ¶¶ 312–17, 337. Olnick and Spanu spoke with Plaintiff about his concerns with Fossati's allegedly discriminatory treatment of female employees.[1] ¶¶ 320–33. He later learned from Schulte that her investigation into Fossati corroborated the allegations in his February Complaint. ¶ 335. Fossati was removed as Director on April 23, 2024. ¶ 201. Less than two months later, on June 20, 2024, Plaintiff was fired for allegedly poor performance. ¶¶ 338–39.

## III.    Procedural History

Plaintiff filed this case on April 9, 2025. On June 25, 2025, Defendants filed their Motion to Compel Arbitration. ECF No. 23 ("MCA"). One week after the Motion was fully briefed, Plaintiff submitted a Notice of Supplementary Authority that Defendants opposed. ECF Nos. 28, 32.

## LEGAL STANDARD

The FAA "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up). Under Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA provides that parties can petition a district court for an order compelling arbitration. *Id.* § 4. The role of the courts is "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw*

---

[1] The date of this conversation is unclear. Although it is alleged to have occurred in early May 2024, it also is alleged to have occurred before Fossati's removal as director, which occurred on April 23, 2024. *See* Compl. ¶¶ 320, 334–36.

*Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)). In considering a motion to compel arbitration, courts typically "apply a standard similar to that applicable for a motion for summary judgment," deciding whether there is an issue of fact as to the making of the agreement based on "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (cleaned up).

However, under the EFAA, courts look instead to the content, and sometimes the sufficiency, of a plaintiff's pleadings to determine whether that statute bars compelled arbitration. *See, e.g.*, *Smith*, 2025 WL 2782484, at *1 n.1 ("[O]nly [Plaintiff's] allegations are relevant in determining whether the [arbitration agreement] is not valid and enforceable under the EFAA."); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024) ("The more challenging interpretative question concerns the allegations that are necessary to invoke the EFAA in the first place and to determine whether the statute is applicable to the case."); *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 252 (S.D.N.Y. 2024), *reconsideration denied*, No. 23-CV-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024) (assuming, for purposes of the opinion, that all factual allegations relevant to the plaintiff's sexual harassment claims were true); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) (discussing the EFAA's incorporation of the term "alleged").

## DISCUSSION

The sole issue in this case is whether the EFAA—which can, when invoked, prohibit forced arbitration in sexual harassment disputes—prevents Defendants from compelling arbitration. The Court concludes the EFAA applies here. In reaching this conclusion, the Court

7

first confirms that there is a valid arbitration agreement that covers the instant dispute. Next, the Court finds that "sexual harassment" under the EFAA covers gender-based harassment under New York law. Because Plaintiff alleges he was retaliated against for making nonfrivolous complaints about gender-based harassment, the Court finds that the EFAA permits him to avoid arbitration in this case.

## I.      There Is No Dispute That a Valid Arbitration Agreement Exists and Is Applicable to This Case

Although no party disputes these issues, the Court first addresses whether a valid arbitration agreement exists and covers the present dispute. *See, e.g.*, *Chambers v. Maplebear, Inc.*, 746 F. Supp. 3d 206, 211 (S.D.N.Y. 2024), *appeal dismissed* (May 7, 2025). Plaintiff agreed to arbitrate "any dispute, controversy or claim between the parties . . . other than claims that cannot be legally arbitrated." ECF No. 25-1 ¶ 19. Plaintiff signed the agreement in December 2021, and then subsequently signed a superseding agreement in October 2022 after being promoted. MCA at 5–6. The 2022 agreement includes a new job description, together with salary and benefits, and "supersedes all previous oral or written understandings regarding [Plaintiff's] employment." ECF No. 25-2 at 3. But it also specifies that "[a]ll other aspects of [Plaintiff's] employment with MAGAZZINO will remain as they have been." *Id.* Neither party contends that the 2022 agreement displaces the 2021 agreement to arbitrate. *See* MCA at 7; ECF No. 26 ("Opp. to MCA") at 9 n.1. The parties further agree that the present dispute falls within the scope of the arbitration agreement. *See* MCA at 9–10; Opp. to MCA at 9 n.1. Accordingly, the Court is satisfied that the arbitration clause in the 2021 Agreement represents a valid agreement to arbitrate that applies generally to Plaintiff's retaliation claims.

## II.    The EFAA Covers Standalone Claims for Retaliation

The Court now turns to whether federal law prohibits Defendants from compelling arbitration of Plaintiff's claims.[2] "The EFAA is codified directly into the FAA and limits the scope of this broad mandate to enforce arbitration agreements." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 84 (2d Cir. 2024). It states:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). Courts in this district have held that "the text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023).

Defendants argue that the EFAA does not cover standalone retaliation claims where the plaintiff does not allege experiencing sexual harassment themselves. MCA at 11–13. In support of their argument, they rely primarily on legislative history, including Congressional debates and the original proposed language of the EFAA. *Id.* They further claim that no case law has applied the EFAA to standalone retaliation claims of this nature. *Id.* at 13. Both arguments are misplaced. "When interpreting a statute, we begin with the text," giving effect to the text's plain meaning. *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021). "Where the words of a statute are unambiguous, our inquiry is generally confined to the text itself." *Fowlkes v.*

---

[2] Whether the EFAA applies is a question for this Court to determine. *See* 9 U.S.C. § 402(b) ("[T]he validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator . . . .")

*Thomas*, 667 F.3d 270, 272 (2d Cir. 2012). Defendants fail to point to any language in the statute that is ambiguous, and the Court does not find any.

The unambiguous language of the EFAA states that it applies when the case "relates to [a] . . . sexual harassment dispute." 9 U.S.C. § 402(a). The Second Circuit has already determined that the EFAA, through this language, covers retaliation claims premised on reporting sexual harassment. *See Olivieri*, 112 F.4th at 92 (quoting 9 U.S.C. § 401(4)). That is because "retaliation for reporting discrimination is reasonably *related to* the underlying discrimination." *Id.* (cleaned up) (emphasis added). Plaintiff's claim that he was retaliated against for reporting sexual harassment is therefore related to the underlying allegations of sexual harassment.

Plaintiff is also a "person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). The fact that there is no underlying claim for sexual harassment in this action is immaterial. Instead of requiring a plaintiff to assert a "claim" constituting a sexual harassment dispute, Congress only required a plaintiff to allege "conduct." "Congress knows how to use the narrower term 'claim' when it so intends" and in fact utilized it elsewhere in the statute. *Diaz-Roa*, 757 F. Supp. 3d at 532 (citing *Keene Corp. v. United States*, 508 U.S. 200, 210 (1993)); *see also Johnson*, 657 F. Supp. 3d at 559 ("[The EFAA] shall apply with respect to any dispute or claim that arises or accrues on or after March 3, 2022." (quoting Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022))). Courts "generally presume[] that when Congress includes particular language in one section of a statute but omits it in another, Congress intended a difference in meaning." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 314 (2020) (cleaned up). Congress could have included language to limit applicability to persons who have brought claims of sexual harassment, but it did not. Thus, the Court finds no basis to draw that distinction.

10

Accordingly, the Court finds that a standalone retaliation claim like O'Donnell's fits within the plain meaning of the statute.[3] Plaintiff complained about workplace behavior that he alleged was wrongful, discriminatory, and ignored by management. Compl. ¶¶ 285, 288. His complaint led to at least one confrontation about its merits, in which he attributed the conduct to being about gender. *See id.* ¶¶ 303–11. He contends that he was subsequently fired for making these complaints and in retaliation for reporting sexual harassment. *See, e.g.*, *id.* ¶¶ 357–58. It is undisputed that Mr. O'Donnell does not himself allege experiencing sexual harassment, but that distinction does not appear in the EFAA itself. Thus, because the statute is unambiguous, the Court concludes that Plaintiff's standalone retaliation claim is covered by the EFAA.

### III.    Plaintiff's Claims Relate to a Sexual Harassment Dispute as Defined Under New York Law

"The threshold requirement that must be satisfied for the EFAA to permit a litigant to avoid enforcement of a pre-dispute arbitration agreement is that the litigant must allege 'conduct constituting a sexual harassment dispute or sexual assault dispute,' as defined in the statute." *Diaz-Roa*, 757 F. Supp. 3d at 531 (quoting 9 U.S.C. § 402(a)). Accordingly, the Court considers how to define "sexual harassment" under the relevant laws and subsequently determines that, because it encompasses gender-based harassment under New York law, the threshold for invoking the EFAA is met here. Because invalidation of an arbitration agreement under the EFAA extends to the entirety of the case, not just to individual claims, the Court does not need to reach the definition of sexual harassment under Title VII. *Johnson*, 657 F. Supp. 3d at 559.

---

[3] The Court examines below why the gender-based harassment Plaintiff alleges fits within the NYSHRL's definition of "sexual harassment." *See infra* Part III.

11

### A.    Sexual Harassment Includes Gender-Based Harassment Under New York Law

The main issue is whether Plaintiff's complaints about Fossati's treatment of female employees, including Scarborough, are complaints about "conduct constituting . . . sexual harassment." 9 U.S.C. § 402(a). The parties dispute whether the conduct Plaintiff complained about must have been romantic or sexual in nature, or whether gender-based conduct alone is sufficient for Plaintiff to prevail under the EFAA. As discussed below, the Court finds that sexual harassment under the NYSHRL is broadly defined to include any kind of gender-based harassment.

The EFAA defines "sexual harassment" as "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The EFAA is unambiguous that courts should draw the definition of "sexual harassment" from the applicable laws under which a claim is brought. *See id.* However, the NYSHRL itself does not use the phrase "sexual harassment." N.Y. Exec. Law § 296. Instead, the law forbids employers from "subject[ing] any individual to harassment because of an individual's . . . sexual orientation, gender identity or expression, [or] sex." *Id.* § 296(1)(h). The Court is thus left to interpret how the NYSHRL contemplates "sexual harassment." The statutory text and relevant case law consider "gender" and "sex" together but fail to provide a concrete answer. Thus, the Court looks to how the New York Division of Human Rights ("NYDHR"), the agency tasked with enforcing the NYSHR, interprets it. *See Owens v. PriceWaterHouseCoopers LLC*, 786 F. Supp. 3d 831, 845 (S.D.N.Y. 2025) (quoting *Wang v. James*, 40 N.Y.3d 497, 501–02 (2023)) ("Deference is accorded to an agency's interpretation of a statute when the interpretation involves the specialized competence or expertise the agency has developed in administering the statute."); *Singh*, 750 F. Supp. 3d at 257 (same).

12

The most instructive source here is offered in a model policy. The New York Department of Labor and NYDHR developed a policy that states:

> Sexual harassment is a form of gender-based discrimination that is unlawful under federal, state, and (where applicable) local law. Sexual harassment includes harassment on the basis of sex, sexual orientation, self-identified or perceived sex, gender expression, gender identity, and the status of being transgender. Sexual harassment is not limited to sexual contact, touching, or expressions of a sexually suggestive nature. Sexual harassment includes all forms of gender discrimination including gender role stereotyping and treating employees differently because of their gender.

*Sexual Harassment Policy for All Employers in New York State*, N.Y. State, https://www.ny.gov/sites/default/files/2024-08/SexualHarassmentModelPolicyUpdated.pdf (last visited March 26, 2026). The Court gives credence to this formulation, in the absence of direct regulations defining sexual harassment, as the most official statement of the NYDHR's interpretation of sexual harassment.[4] The NYDHR's participation in its development was mandated by law, and it is a formal policy document disseminated widely across the state. *See* N.Y. Lab. Law § 201-g(1) ("The department shall consult with the division of human rights to create and publish a model sexual harassment prevention guidance document and sexual harassment prevention policy . . . . Such model sexual harassment policy shall . . . prohibit sexual harassment consistent with guidance issued by the department in consultation with the division of human rights.").

The Court's finding that sexual harassment is broadly defined under New York state law has support in case law. Although NYSHRL claims before October 11, 2019, were "governed by

---

[4] The Court recognizes that this conclusion conflicts with that of another judge in *Singh v. Meetup LLC*, No. 23-CV-9502 (JPO), 2024 WL 4635482, at *3 (S.D.N.Y. Oct. 31, 2024). There, the court relied on a brochure created by NYSDHR that did not define "sexual harassment" as broadly. However, the model policy was created in response to a statutory mandate and serves as the model policy for employers in the state, *see* N.Y. Lab. Law § 201-g(1); the Court, therefore, adopts its definition.

the same standard" as Title VII, *see Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013), courts now look to the New York City Human Rights Law ("NYCHRL") when interpreting the NYSHRL. Effective that date, the law was amended to define harassment in the workplace as "an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories." N.Y. Exec. Law § 296. The statute is intended to "be construed liberally" to accomplish its remedial purposes, regardless of how seemingly comparable federal laws are construed. N.Y. Exec. Law § 300. "This more lenient standard brings state law closer to the standard to establish a hostile work environment claim under the New York City Human Rights Law ('NYCHRL'), under which a plaintiff need only show that he was treated 'less well than other employees' because of their protected class." *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023) (citations omitted); *see also Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024) ("The NYSHRL . . . was amended in 2019 to align with the NYCHRL's more liberal pleading standard."); *Cummings v. City of New York*, No. 2024-5434, 2026 WL 467529, at *1 (1st Dep't 2026) ("The NYSHRL . . . put in place a more lenient standard of liability that has been likened to that of the NYCHRL." (cleaned up)).

Indeed, many courts have treated the NYSHRL and NYCHRL as coextensive. *See, e.g.*, *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."); *Wheeler*, 694 F. Supp. 3d at 452 (S.D.N.Y. 2023) ("The Court will assume *arguendo*, for purposes of this motion, that the amended NYSHRL tracks the NYCHRL."). And some judges in this District have, in parallel, concluded that sexual harassment under the NYCHRL includes gender-based harassment more

14

broadly. *See, e.g.*, *Toomey v. One Equity Partners*, No. 24-CV-4088 (MMG), 2026 WL 458244, at *6 (S.D.N.Y. Feb. 18, 2026); *Owens*, 786 F. Supp. 3d at 845–46.[5] The dominant state court interpretation supports their position. *See Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 37 (1st Dep't 2009) ("As applied in the context of sexual harassment [under the NYCHRL], the relevant question is what constitutes inferior terms and conditions based on gender."); *id.* ("There is no 'sexual harassment provision' of the law to interpret; there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender." (citing Administrative Code § 8–107[1][a])); *see also, e.g.*, *Doe v. Zaremski*, No. 21-CV-3187 (ER), 2022 WL 2966041, at *4 n.2 (S.D.N.Y. July 27, 2022) (adopting the *Williams* standard); *Feldesman v. Interstate Hotels LLC*, No. 16-CV-9352 (ER), 2019 WL 1437576, at *8 (S.D.N.Y. Mar. 31, 2019) (same). Accordingly, the Court concludes that sexual harassment under the NYSHRL includes gender-based harassment.

### B. Plaintiff Sufficiently Alleges Conduct Within the Meaning of "Sexual Harassment" Under New York Law

Courts in this District are split over whether the EFAA should be interpreted to require a plaintiff to plead plausible claims of sexual harassment that can withstand a motion to dismiss or merely nonfrivolous claims of sexual harassment. *Compare Diaz-Roa*, 757 F. Supp. 3d at 533 ("[T]he view that is more faithful to Congress' language and intent is that a plaintiff need only plead nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual

---

[5] Other judges in this District have found that the EFAA only exempts NYSHRL and NYCHRL claims from arbitration when they allege harassment of a romantic, lewd, or sexual nature. *See Singh*, 750 F. Supp. 3d at 257 ("But not all gender discrimination [under the NYCHRL] is sexual harassment."); *Montanus v. Columbia Mgmt. Inv. Advisers, LLC*, No. 25-CV-2798 (PAE), 2025 WL 3706567, at *3 (S.D.N.Y. Dec. 22, 2025) ("But [gender discrimination] is outside the scope of the EFAA."); *Smith*, 2025 WL 2782484, at *8 ("[R]egardless of the source of law, sexual harassment must be sexual in nature."); *Singh v. Meetup LLC*, No. 23-CV-9502 (JPO), 2024 WL 4635482, at *3 ("But the concept of 'harassment' still must have some meaning.").

harassment, with the sufficiency of those claims to be reserved for proper merits adjudication . . . ."), *with Yost*, 657 F. Supp. 3d at 585 ("But for four reasons, the Court holds, the term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard."). For all of the reasons stated by the court in *Diaz-Rosa*, the Court here applies the nonfrivolous standard articulated therein. Particularly in the context of a standalone claim for retaliation, it makes little sense to hold Plaintiff to a pleading standard for the underlying sexual harassment. The success or failure of Plaintiff's claims in this case is independent from the merits of the gender-based harassment he alleges. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("To prevail on a retaliation claim, the plaintiff need not prove that her underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." (cleaned up)). Rather, the only relevant inquiry into those underlying claims pertains to Plaintiff's own knowledge, state of mind, and reasonableness. *See id.* In determining that the type of conduct alleged here is covered by the EFAA, the Court does not reach the question of whether Plaintiff *plausibly* states a claim for sexual harassment. Accordingly, the Court assesses whether Plaintiff makes nonfrivolous allegations of sexual harassment, or harassment on the basis of gender, under New York law— and finds that he does.

Plaintiff's allegations are not frivolous here. He alleges facts showing that Scarborough was treated poorly by Fossati in a manner that exceeded mere incivility and that Fossati treated many women around Magazzino in a similar manner, despite utilizing a different approach with men. Fossati visited Scarborough's apartment after she asked him not to, Compl. ¶¶ 117–20, 133; he yelled at her multiple times for reasons unrelated to her work performance, *see id.* ¶¶ 117–20, 142–48; he cut Scarborough out of events, questioned her credentials, and did not give her credit

16

for her ideas, *see id.* ¶¶ 109–13, 137–38, 143. Scarborough clearly expressed that his conduct made her uncomfortable by seeking recourse from human resources and working from home to avoid him. *Id.* ¶¶ 132, 158. Fossati questioned the credentials of other women he worked with or supervised, and many complained to human resources about his behavior. *Id.* ¶¶ 114, 279. Male employees noticed that women were being treated worse than men. *See id.* ¶ 126. And Plaintiff attested that management had not criticized his behavior before he made the February Complaint, either. *Id.* ¶¶ 301, 318. The Court finds that these allegations, taken together, constitute a nonfrivolous allegation related to gender-based harassment.

Plaintiff's allegations about gender-based harassment are also demonstrably "related to" his retaliation claim—beyond mere incorporation into the Complaint—because he referenced them in his February Complaint and in his conversations with Spanu. Regarding Scarborough, he stated: "Our scholar is not comfortable being in the building when [Fossati] is here. She comes in to get material and works off site. They had a meeting and both were shaking by the end." *Id.* ¶ 288. In a discussion with Spanu about his February Complaint, Plaintiff said: "It is not like one woman is being mistreated, multiple women are being mistreated." *Id.* ¶ 308. This statement makes clear that Plaintiff was complaining about gender-based harassment. In sum, the EFAA applies here because Plaintiff complained about conduct that constitutes sexual harassment under the NYSHRL.

17

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Confirm Arbitration and Stay the Action pending arbitration is DENIED. By **April 7, 2026**, Defendants are directed to file a letter indicating whether they intend to pursue an interlocutory appeal. The Clerk of Court is directed to terminate ECF No. 23.

Dated: March 31, 2026
        New York, New York

                                          SO ORDERED.

                                          _____

                                          JESSICA G. L. CLARKE
                                          United States District Judge

18